**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                  Case No.:    3:00-cr-436-BJD-JBT-1

KARL WALDON

## ORDER

On June 2, 2021, the Court denied Defendant Karl Waldon's "Motion [under] 28 U.S.C.A. Section 1361," which the Court construed as a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 683, Order Denying Motion for Sentence Reduction; see also Doc. 669, Motion for Sentence Reduction). This case is before the Court on Waldon's Motion for Reconsideration (Doc. 690, "Motion"; see also Doc. 690-1 through 690-14, Def. Exs. 1–10, 12–15; Doc. 694, Def. Sealed Ex. 11). The United States has responded in opposition. (Doc. 696, Response).

As a threshold matter, the Court must ensure it has jurisdiction to rule on the instant Motion. Before Waldon moved for reconsideration, Waldon filed a notice of appeal from the denial of the Motion for Sentence Reduction. (Doc. 688, Notice of Appeal). The filing of a notice of appeal confers jurisdiction on the court of appeals and, subject to certain exceptions, divests the district court of jurisdiction over the aspects of the case involved in the appeal. United States v.

1

Diveroli, 729 F.3d 1339, 1341 (11th Cir. 2013) (citation omitted). Under Federal Rule of Criminal Procedure 37, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).

Here, the Court gave Waldon an extension of time to file a motion for reconsideration (Doc. 687), and Waldon filed the Motion within the extended time frame. Because Waldon timely filed the Motion, the Court has jurisdiction to defer consideration, deny the Motion, or indicate whether it would grant relief. The Court will deny the Motion.

In the Order denying Waldon's Motion for a Sentence Reduction, the Court found no indication that Waldon had satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement. Order Denying Motion for Sentence Reduction at 6. Putting exhaustion aside, the Court found that Waldon had not shown "extraordinary and compelling" circumstances under § 3582(c)(1)(A), U.S.S.G. § 1B1.13, and United States v. Bryant, 996 F.3d 1243 (11th Cir. 2021), and that his arguments otherwise lacked merit. Id. at 6–10. In addition, the Court concluded that even if Waldon had shown extraordinary and compelling

circumstances, the sentencing factors under § 3553(a) did not support a sentence reduction. Id. at 10–11. The Court explained:

> Waldon, a former law enforcement officer for the Jacksonville Sheriff's Office (JSO), was convicted and sentenced to life in prison "for his involvement in a crime spree that culminated in the robbery and murder of convenience store owner Sami Safar." United States v. Waldon, 363 F.3d 1103, 1106 (11th Cir. 2004). Following trial, a jury found Waldon guilty of more than a dozen crimes, including obstruction of justice by murder. The Court sentenced Waldon to concurrent terms of life in prison for conspiracy to violate civil rights (Count One of the Second Superseding Indictment), depriving a person of civil rights (Counts Seven and Eight), and obstruction of justice by murder (Count Twelve). (Doc. 582, Amended Judgment). In addition, the Court imposed the following sentences: concurrent terms of 20 years in prison for conspiracy to distribute narcotics (Count Two), the distribution of cocaine (Counts Four and Ten), and Hobbs Act robbery (Count Nine); concurrent terms of 10 years in prison for depriving a person of civil rights (Count Six), making a false statement before a grand jury (Counts Thirteen and Fourteen), and threatening a witness (Count Fifteen); five years in prison for conspiracy to obstruct justice (Count Eleven); and one year for depriving a person of civil rights (Count Three). Id. The Eleventh Circuit Court of Appeals affirmed Waldon's convictions and sentences on direct appeal, Waldon, 363 F.3d at 1113, and the United States Supreme Court denied his petition for a writ of certiorari, Waldon v. United States, 543 U.S. 867 (2004).
>
> ***
>
> [E]ven if Waldon could somehow demonstrate extraordinary and compelling circumstances, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A). Waldon was justly sentenced to life in prison for a crime spree that culminated in him murdering an innocent man. See Waldon, 363 F.3d at 1106-08 (describing the facts of the offenses of conviction). Releasing Waldon from prison after a little over 20 years would utterly fail to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Although Waldon proclaims himself rehabilitated, he minimizes his role in the offense by suggesting he is no more culpable than the codefendants who did not murder Sami Safar. Such statements do not reflect acceptance of responsibility or remorse, despite what Waldon says to the contrary. Although the Court commends Waldon for trying to better himself while in custody, reducing his sentence is not warranted in view of all the § 3553(a) factors.

Id. at 1–2, 10–11 (footnote omitted).

In the instant Motion, Waldon argues that the Court should reduce his sentence and release him from custody for a variety of reasons. Among other things, he argues that he has several medical conditions, including sleep apnea, shortness of breath, hypertension, chronic periodontis, obesity, oral mucositis, lesions of the oral mucosa, and "severe damage" to his right knee, which allegedly increase his risk of death or serious illness from Covid-19. Motion at 9–10. He asserts that his mother had cancer, which required Waldon's sister to act as her caregiver, and that his mother passed away in August 2020. Id. at 11–13. He contends that four months after his mother passed away, he contracted Covid-19 while working as a prison custodian, and that he and other Covid-positive inmates were quarantined "in filthy mold infested cells and given thin unwashed blankets that did nothing to keep them warm." Id. at 13–14. Waldon further asserts that he recently discovered that one of the government's "witnesses" at trial, William Baer, was arrested in July 2020 (along with Baer's wife) for the 1999 murder of a person named Saad Kawaf. Id. at 14–15. State authorities arrested Baer for Kawaf's murder based on DNA analysis that was performed in 2019 and 2020. Response at 12. Waldon claims that this evidence impeaches Baer's testimony and that it is "beyond comprehension" why the government did not disclose it to Waldon. Motion at 15. Notably, however, there is no indication that Baer testified at Waldon's trial. William Baer was not

4

named in the United States' witness list (Doc. 481) or supplemental witness list (Doc. 537); his name does not appear in the Master Index of testimony and evidence (see Doc. 621, Master Index); and none of the trial transcripts appears to contain testimony from William Baer (see Docs. 602–618, Trial Transcript Vols. 10–26).[1] Waldon also argues that he should be released from prison because he has been rehabilitated and that the Court should give little weight to the interest of finality.

The Court has carefully considered each of Waldon's arguments and exhibits. The Court concludes that none of Waldon's arguments, alone or in combination, qualifies as an extraordinary and compelling reason to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) and the applicable policy statement, by which this Court is bound. See U.S.S.G. § 1B1.13 & cmt. 1; Bryant, 996 F.3d 1247–48.[2] There is no indication that Waldon's medical conditions impair his ability to provide self-care within the prison environment. Indeed, he is classified as a Care Level 1 "healthy or simple chronic care" inmate. (Doc. 690-12 at ECF p. 3). Insofar as Covid-19 is concerned, Waldon has (wisely) accepted

---

[1]  According to a local news source, Baer testified in 2003 before a federal grand jury that was investigating police corruption. https://www.jacksonville.com/story/news/local/2020/07/02/former-jacksonville-sheriffrsquos-officer-and-ex-wife-arrested-in-connection-to-1999-homicide/41714777/.  But as noted above, the Court found no indication that Baer testified at Waldon's trial in 2002.

[2]  The Court would reach the same conclusion even if it were not bound by U.S.S.G. § 1B1.13.

both doses of the Pfizer Covid-19 vaccine (Gov't Sealed Exhibit 1, pp. 39, 43), thus considerably reducing his risk of death or serious illness from coronavirus.[3] The Court expresses its condolences to Waldon for the passing of his mother, but her illness would not have qualified as a reason for a sentence reduction. The illness, incapacity, or death of a parent is not an extraordinary and compelling family circumstance under U.S.S.G. § 1B1.13, cmt. 1(C). As for the alleged conditions of Waldon's Covid-19 quarantine and the newly discovered evidence about William Baer, neither qualifies as an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(a). See U.S.S.G. § 1B1.13, cmt. 1. Besides, as noted above, there is no indication that Baer testified at Waldon's trial. And even if he did, Waldon fails to describe what Baer testified to or why his testimony was material.

In the Motion, Waldon makes much of the fact that there was confusion about the scope of the Federal Public Defender's appointment in this case and whether that appointment extended to his request for compassionate release. See Motion at 1–5, 11–12, 15–16.[4] Two things bear mentioning. First, a movant

---

[3]   According to the BOP's latest data, 157 staff members and 1,110 inmates at Waldon's facility, Williamsburg FCI, have been fully vaccinated against Covid-19, accounting for 72% of the facility's 1,540 total inmates. https://www.bop.gov/coronavirus/. Last accessed August 30, 2021. At last count, only two staff members and one inmate are positive for Covid-19 at Williamsburg FCI. Id.

[4]   Waldon claims he wrote the Court about the appointment of counsel (see Doc. 690-3), but the Court has no prior record of receiving correspondence from Waldon on the subject.

under § 3582(c) has no right to the assistance of counsel. See United States v. Webb, 565 F.3d 789, 794–95 (11th Cir. 2009); United States v. Terry, No. 20–14168, 2021 WL 3028780, at *1 (11th Cir. July 19, 2021) (unpublished). Second, and more important, after the Court denied Waldon's Motion for Sentence Reduction, the Court granted Waldon leave to move for reconsideration and an extension of time to do so, recognizing the confusion about the scope of counsel's appointment. (Doc. 687). The Court granted Waldon an extension of time to give him a full and fair opportunity to present his request for a sentence reduction. Waldon has now had such an opportunity, filing a 19-page motion for reconsideration and 15 exhibits. Even considering Waldon's request for a sentence reduction afresh in light of his current arguments and exhibits, the Court finds he has not demonstrated extraordinary and compelling reasons for a sentence reduction.

In any event, the sentencing factors under 18 U.S.C. § 3553(a) do not support reducing Waldon's sentence. See Order Denying Motion for Sentence Reduction at 10–11. As the Court said before:

> Waldon was justly sentenced to life in prison for a crime spree that culminated in him murdering an innocent man. See Waldon, 363 F.3d at 1106-08 (describing the facts of the offenses of conviction). Releasing Waldon from prison after a little over 20 years would utterly fail to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Id. Nothing in Waldon's Motion alters the Court's analysis of the § 3553(a) factors.

Waldon proclaims himself rehabilitated, but he fails to express genuine remorse or genuine acceptance of responsibility for taking the life of Sami Safar. Strikingly, Waldon says he "can proudly and honestly say that his past is the past and he will not allow it to dominate the present and consequently destroy his future." Motion at 17. That's good for Waldon, but Sami Safar and his family cannot say the same. Waldon murdered an innocent man and was sentenced to life in prison for it; the Court will not relieve Waldon of his sentence.

Accordingly, Karl Waldon's Motion for Reconsideration (Doc. 690) is **DENIED**. The United States' request to file Waldon's medical records under seal (Doc. 696 at 6) is **GRANTED**. The Clerk will file under seal the medical records submitted by the United States. (See Doc. 696-1).

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of August, 2021.

BRIAN J. DAVIS
United States District Judge

lc 19
Copies:
Counsel and parties of record
Clerk of Court, United States Court of Appeals for the Eleventh Circuit